JUDGE KATHLEEN CARDONE

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| **BRANDON CALLIER,** | § |
| | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **v.** | § |
| | § |
| **MICHAEL JOHNSON, KEEPING CAPITAL,** | § |
| **LLC,** a Florida Limited Liability Company d/b/a | § |
| **DEBT DISSOLUTION,** and **DAVID KING** | § |
| | § |
| **Defendants.** | § |
| | § |

**EP21CV0157**

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. The Plaintiff is BRANDON CALLIER, a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2. Defendant MICHAEL JOHNSON ("Johnson") is a natural person, attorney, not licensed to practice in Texas, and resident of Massachusetts and can be served at 255 Main Street, Weymouth, Massachusetts 02188.

3. Defendant KEEPING CAPITAL LLC ("Keeping") d/b/a Debt Dissolution is a Limited Liability Company organized and existing under the laws of Florida and can be served via registered agent David King at 6445 Hollywood Boulevard, Sarasota, Florida, 34231.

4. Defendant DAVID KING ("King") is a natural person, resident of Florida, and a Director and Officer of Keeping Capital, LLC and can be served at 6445 Hollywood Boulevard, Sarasota, Florida 34231.

## JURISDICTION AND VENUE

5. <u>Jurisdiction</u>. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

6. <u>Personal Jurisdiction</u>. This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

7. <u>Venue</u>. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

8. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT

### OF 1991, 47 U.S.C. § 227

9. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N.

1968, 1969-71.

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel.*

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

*Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

21. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS

159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## The Texas Business and Commerce Code § 302.101

22. The Texas Business and Commerce code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas.

23. The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

## FACTUAL ALLEGATIONS

24. Plaintiff has been on the Do-Not-Call Registry since December 2007.

25. Defendant Johnson is not licensed to practice in Texas.

26. Defendants do not have a solicitation registration certificate on file with the Texas Secretary of State.

27. On January 19, 2021, Plaintiff filed Complaint number EP-21-CV-0011 in the Western District of Texas for alleged solicitation calls made by Defendants Keeping and King on behalf of The Litigation Practice Group, a group of attorneys based in California.

28. Defendants Keeping and King operate a solicitation business marketing the debt elimination services of attorneys.

29. Plaintiff began settlement negotiations with Defendants Keeping and King in March 2021.

30. On April 13, 2021, Plaintiff received a solicitation phone call from "Leonard," an employee and/or agent of Defendant Keeping, soliciting the debt elimination services of Defendant Johnson.

31. Plaintiff enrolled in the program to insure it was indeed the same "Leonard" from the original Complaint.

32. Plaintiff received a contract confirming it was the same "Leonard" from the original Complaint soliciting as an agent and/or employee of Defendant Keeping.

33. The contract listed Defendant Johnson as the attorney on whose behalf the solicitation was made.

34. On April 14, 2021, Plaintiff emailed the attorney representing Defendants Keeping and King and informed him Plaintiff had received an additional unwanted phone call from "Leonard" and asked the Defendants to include the additional call as part of the settlement.

35. Defendant Keeping called Plaintiff an additional seven times after Plaintiff alerted their attorney Plaintiff had received another unwanted solicitation call.

36. On April 14, 2021, Defendant Johnson called Plaintiff from his phone ending in 2133.

37. Defendant Johnson welcomed Plaintiff to the program and talked to Plaintiff about the legal services he would be providing Plaintiff.

38. Through information and belief Defendant Johnson is not licensed to practice law in Texas.

39. Defendants called and text Plaintiff's cell phone at least 9 times from April 13, 2021, to April 29, 2021.

40. Defendants use robocalls and telemarketers to market their professional legal services for Debt Validation.

41. Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes and ethical practices for the solicitation of legal services.

42. Defendants participated in, facilitated, directed, authorized, knew of, or willfully ignored the

6

unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

43. Plaintiff never consented to receive the calls alleged herein. Plaintiff previously sued Defendants for TCPA violations prior to the calls and texts alleged herein.

44. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

45. Mr. Callier has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

46. No emergency necessitated the calls.

47. None of the defendants ever sent Mr. Callier any do-not-call policy.

48. On information and belief, the Defendants did not have a written do-not-call policy while it was sending Mr. Callier the unsolicited calls,

49. On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

## VICARIOUS LIABILITY OF THE SELLERS

50. These parties are vicariously liable under the theories of actual authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

51. The Defendant Johnson is the liable party as the direct beneficiary of the illegal telemarketing calls as he stood to gain the Plaintiff as a client and quoted the Plaintiff his services in debt validation.

52. The email shows that the beneficial party who was gaining customers was Defendant Johnson.

53. Defendant Johnson authorized a third-party telemarketer to generate prospective customers. Defendant Johnson hired a third-party to promote its products and services. Defendant's integration of robocalling into its sales process was so seamless that it appeared to an outside party like Plaintiff that the third-party telemarketer was the telemarketing department of Defendant Johnson.

### THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE
### DETERRENT EFFECT AND PURPOSE OF THE TCPA

54. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

### INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
### AS A RESULT OF THE CALLS

55. Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

56. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

57. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

58. Defendant's calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

59. The Plaintiff has been harmed, injured, and damages by the calls including, but not limited to:

- Reduced Device Storage space

- Reduced data plan usage

- Anger

- Frustration

- Invasion of privacy

- More frequent charging of my cell phone resulting in reduced enjoyment and usage of my cell phone

### The Plaintiff's cell phone is a residential number

60. The calls were to the Plaintiff's cellular phone 915-383-4604 which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code § 302.101

61. The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

62. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

### FIRST CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

1.      Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

a.     a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

b.     training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

c.     in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

3.     Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

4.     Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

5.     Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

## SECOND CLAIM FOR RELIEF

### (Violations of The Texas Business and Commerce Code 302.101)

6.     Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

7.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Mr. Callier's cellular telephone number without his prior express written consent.

8.      Mr. Callier is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.101**.

## IV.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff BRANDON CALLIER prays for judgment against the defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.      An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $1500 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for at least 9 calls;

E.      An award of $5,000 per call in statutory damages arising from violations of the Texas Business and Commerce code 302.101;

F.      An award to Mr. Callier of damages, as allowed by law under the TCPA;

G.      An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity;

H.      Such further relief as the Court deems necessary, just, and proper.

July 6, 2021,                                  Respectfully Submitted,

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604