IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| BRANDON CALLIER, § § *Plaintiff*, § § vs. § § MICHAEL JOHNSON, KEEPING CAPITAL, § LLC d/b/a DEBT DISSOLUTION, AND § DAVID KING, § § *Defendant.* § § | Case #: 3:21-CV-0157-KC |

### DEFENDANTS KEEPING CAPTIAL LLC AND DAVID KING'S
### MOTION TO SET ASIDE ENTRY OF DEFAULT

Defendants, KEEPING CAPITAL, LLC, d/b/a DEBT DISSOLUTION ("***Debt Dissolution***") and DAVID KING ("***King***", and, together with Debt Dissolution, "***Defendants***") ask the Court to set aside the entry of default, as authorized by Federal Rule of Civil Procedure 55(c). This Motion is supported by David King's Affidavit, which is annexed and incorporated by reference ("***King Aff.***")

## I.
## Introduction

1.  Plaintiff is BRANDON CALLIER ("***Callier***").

2.  Plaintiff sued Defendants and MICHAEL JOHNSON alleging violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("***TCPA***") and Section 302.101 of the Texas Business & Commerce Code ("***TBCC***").

3.  On September 1, 2021, the clerk entered a default against all defendants.

4.  These Defendants ask the Court to set aside the clerk's entry of default. Defendants filed this motion as soon as possible after learning of the entry of default.

# II.
# Background Facts

5.      Debt Dissolution offers telephone marketing services for attorneys and law firms. King is the president and CEO of Debt Dissolution. King Aff., ¶ 1.

6.      Callier sued Defendants in an earlier case (No. 3:21-CV-0011-DCG, Brandon Callier v. The Litigation Practice Group, et al., In the Western District of Texas, El Paso Division) ("***First Case***") alleging he received unwanted telephone marketing solicitations from Debt Dissolution on behalf of its client, The Litigation Practice Group ("***LPG***"). According to the allegations in the First Case, the alleged solicitations occurred on or about December 15 and December 17, 2020 (*See*, First Case, Doc. # 1). King Aff., ¶ 2.

7.      Beginning in March 2021, Callier and Defendants entered settlement negotiations. In the midst of these negotiations, Callier alleges he received additional telephone solicitations from Debt Dissolution on behalf of a different client, an attorney named Michael Johnson. According to the Complaint in this lawsuit, the calls occurred between April 17 to 29, 2021 ("***Second Calls***"). King Aff., ¶ 3.

8.      Defendants and Callier subsequently entered a Settlement Agreement. Under the Agreement, Callier agreed to release all claims against Defendants in return for payment of $10,000. King Aff., ¶ 4.

9.      Callier signed the Settlement Agreement on April 30, 2021. Defendants signed the Settlement Agreement on May 4, 2021. At present, there is a dispute between the parties concerning the Settlement Agreement's effective. Callier falsely claims the Settlement Agreement was effective April 1, 2021. King Aff., ¶ 5.

10.     However, that is not true. The Settlement Agreement was executed in multiple counterparts. The initial draft of the Settlement Agreement stated it was effective as of April 28,

2021. Callier signed that Agreement on April 30. A true and correct copy of that document is attached as Exhibit 1. Defendants countersigned the Agreement separately on May 4. Before signing, Defendants asked that the agreement be modified to reflect an effective date of May 3, 2021. A true and correct copy of Defendants' executed version of the Settlement Agreement is attached as Exhibit 2. King Aff., ¶¶ 6-7.

11. There is presently some confusion as to which version of the Settlement Agreement is the final executed version. However, under either version, there is no question that the Settlement Agreement became effective on April 28, 2021, at the earliest. Thus, because the Second Calls occurred before the effective date of the Settlement Agreement, Callier agreed to release all those claims arising from those calls when he signed the Settlement Agreement.

12. On May 25, 2021, Defendants paid Callier $5,000 as their share of the $10,000 settlement payment.[1] Upon information and belief, the remaining $5,000 due was paid to Callier by LPG. A true and correct copy of the wire transfer confirmation page for Defendants' payment is attached as Exhibit 3. King Aff., ¶ 8.

13. Despite having already released his claims arising from the Second Calls – and despite having already received payment from Defendants – Callier filed this suit on July 6, 2021. (Doc. #1). He now seeks statutory damages of at least $55,000 under the TCPA and TBCC.

14. On September 30, 2021, Callier and King had a phone call with Callier to discuss this suit. They agreed that Callier would agree to suspend prosecution of this litigation for two calendar weeks beginning on October 1, 2021. Callier also agreed that he would file, by no later than October 1, 2021, the following: 1) a Satisfaction of Judgment in the First Case, and 2) paperwork in this case alerting the Court to the two-week suspension. In return, Defendants agreed to engage with settlement discussions with Callier. The parties memorialized their agreement in

---

[1] The payment was made via wire transfer paid by Debt Dissolution's affiliate, Occams Paradigm, Inc.

an email that same day. A true and correct copy of that email chain is attached as Exhibit 4. King Aff., ¶ 9.

15. The following day, on October 1, 2021, Callier emailed Defendants again stating, "David, I just electronically filed the attached satisfaction of judgment. I am working on the settlement notice right now." *See* Exh. 4, Email with Callier, p.1. A copy of a pleading titled "Satisfaction of Judgment" bearing the First Case's caption was attached to that email. King Aff., ¶ 10.

16. Despite Callier's promises and statements to the contrary. He never filed the proposed "Satisfaction of Judgment" in the First Case. Nor did he ever file anything in this case alerting the Court that the parties agreed to suspend this litigation for two weeks beginning on October 1. King Aff., ¶ 11.

17. King had settlement discussions with Callier during the two-week period, however, those discussions were not successful. The last of those discussions occurred on October 14, 2021. The two-week interval ended on October 15, 2021. That same day, Defendants hired the undersigned counsel to represent them in this Lawsuit. King's affidavit confirms Defendants hired Mr. Jurgensen's law firm as soon as possible after they learned the settlement discussions had ended and the two-week litigation hold was over. King Aff., ¶ 12.

## III.
## Argument and Authorities

18. A court may grant a motion to set aside entry of default upon a showing of good cause. FED. R. CIV. P. 55(c); *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 966 (D.C. Cir. 2016); *Sims v. EGA Prods., Inc.*, 475 F.3d 865, 868 (7th Cir. 2007); *Lacy v. Sitel Corp.*, 227 F.3d 290, 291–92 (5th Cir. 2000). In determining whether there is good cause, the court should generally consider (1) the prejudice to plaintiff if the default is set aside, (2) the existence of a

meritorious defense, and (3) defendant's culpable conduct. *Gilmore*, 843 F.3d at 966; *Indigo Am., Inc. v. Big Impressions, LLC*, 597 F.3d 1, 3 (1st Cir. 2010); *see United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).

19. This analysis is analogous to setting aside a default judgment under Fed. R. Civ. P. 60(b)(1). However, the Fifth Circuit Court of Appeals has held "[a]lthough a motion to set aside a default decree under Fed. R. Civ. P. 55(c) is somewhat analogous to a motion to set aside a judgment under Fed. R. Civ. P. 60(b), the standard for setting aside a default decree is less rigorous than setting aside a judgment for excusable neglect." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 544 n.20 (5th Cir. 2014) (citing *United States v. One Parcel of Real Prop.*, 763 F.2d 181, 183 (5th Cir. 1985)). Thus, setting aside an entry of default requires a lower level of proof than setting aside a default judgment once entered.

20. Here, there is good cause to set aside the default in this case for the following reasons:

**A.** **Defendants have a meritorious defense.**

21. Callier signed a Settlement Agreement on April 30, 2021. That Agreement became effective on either April 28 or May 3, as noted above. However, both versions of the agreement specifically define the word "Claim" as follows:

> any and all claims, allegations, assertions, demands, rights, duties, obligations, contracts, agreements, covenants, promises, understandings, debts, indebtedness, demands, trust deeds, encumbrances, liens, damages, injuries, losses, actions, causes of action, claims for relief, costs, expenses, promissory notes, charges, attorneys' fees, judgments, orders, levies and liabilities of any kind and character, demands of any kind and character, arising in connection with any matter whatsoever, whether in law or equity, **known or unknown, suspected or unsuspected, existing or prospective, and concealed or revealed**."

*Compare* Exh. 1 *with* Exh. 2 (emphasis added).

22. Thus, regardless which form of Settlement Agreement applies, Callier expressly agreed to release all "known or unknown, suspected or unsuspected, existing or prospective, and

concealed or revealed" claims from the beginning of time up to the effective date. That means any claims arising from any solicitation calls occurring before the effective date of settlement are barred because Callier agreed to release those claims.

23. Defendants need not establish a meritorious defense as a matter of law. Defendants burden under Rule 55(c) is merely to allege facts that, if true, would constitute a defense to the claims alleged. *See Parker v. Scheck Mechanical Corp.*, 772 F.2d 502, 505 (7th Cir. 2014). Accordingly, whether or not the April 28 or May 3 effective date controls, Defendants have met their burden. They have alleged facts, supported by King's affidavit and copies of the relevant agreement, showing that regardless which version of the Settlement Agreement applies, all or substantially all of Callier's claims are barred by the release he signed. To the extent Callier alleges these Agreements do not apply or that an earlier effective date controls, that is an issue for the factfinder upon a final trial.

24. Thus, Defendants have a meritorious defense under the Settlement Agreement. If the default is set aside, Defendants intend to file an answer asserting this and other defenses to Callier's claims.

**B.    Setting aside the default will not prejudice Callier.**

25. Prejudice in the context of Rule 55(c) requires more than a mere showing of delay in rendition of judgment. *Indigo Am., Inc.*, 597 F.3d 1, 4 (1st Cir. 2010); *FDIC v. Francisco Inv. Corp.,* 873 F.2d 474, 479 (1st Cir. 1989) (explaining that "[t]he issue is not mere delay, but rather its accompanying dangers: loss of evidence, increased difficulties of discovery, or an enhanced opportunity for fraud or collusion."). Here, the default was entered on September 1, 2021. Defendants filed this Motion to Set Aside on October 18, 2021, just a little more than a month later. Such a small interval between entry of default and the filing of a set aside motion does not give rise to the implication that relevant evidence will be lost, that discovery will be more difficult

when litigation begins, or that there has been fraud or collusion. Moreover, Callier has already received at least half ($5,000) of the $10,000 he agreed to in the settlement.

26. Allowing a default judgment to be rendered would be deeply prejudicial to Defendants and result in a harsh or unfair outcome. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Callier seeks over $55,000 in statutory damages and penalties in this lawsuit. However, Defendants bargained for a release of all claims by Callier in exchange for $10,000. These Defendants have already paid him $5,000 under the Settlement Agreement. Thus, allowing the default to stand will reward Callier to the tune of over 5 times the $10,000 that he agreed to accept in exchange for a release of his claims and more than 10 times as much as these Defendants have already paid him.

C. **Defendants' failure to file an answer was not willful.**

27. Thirdly, Defendants' failure to answer or appear was not willful. David King's affidavit confirms that Callier and Defendants agreed to suspend this litigation for two calendar weeks beginning on October 1, 2015, to engage in settlement discussions. In return, Callier agreed to file, by no later than October 1, the following: 1) a Satisfaction of Judgment in the First Case, and 2) paperwork in this case alerting the Court to the two-week suspension. This was agreed to in a phone call between Callier and King on September 1, 2021, and confirmed in writing via email. *See* Exh. 3, Callier Email, p.2.

28. Despite Callier's promise, he failed to file either of these two documents. The two-week suspension period ended on October 15, 2021. King's Affidavit confirms Defendants retained the undersigned counsel that same day to defend this lawsuit and file the appropriate relief to set aside the clerk's entry of default.

29. Based on the foregoing, Defendants' failure to answer was not willful because Defendants relied on Callier's written and verbal promises that he would suspend the litigation to

facilitate settlement discussions. Further, Defendants acted as quickly as possible to contest the default after the two-week period ended. King Aff., ¶¶ 9-12.

D. **Callier's bad faith action in filing this lawsuit despite previously releasing his claims.**

30. The federal courts have noted that, in addition to the traditional 3-part test for setting aside entry of default, a trial court is free to consider other factors under FED. R. CIV. P. 55(c) that may weigh on its discretion.

31. Here, the Court should consider Callier's bad faith. He filed this lawsuit despite having previously settled with Defendants and agreeing to release his claims. The release included all claims from the beginning of time through the Settlement Agreement's effective date, which includes all or substantially all his claims arising from the Second Calls. Further, Defendants paid Callier $5,000 under that Agreement. Despite settling with Defendants and releasing these claims, Callier proceed to file this lawsuit anyway. *See generally* Exhs. 1-3.

32. Callier's bad faith continued after filing suit. On September 1, 2021, he agreed that he would file a Satisfaction of Judgment in the First Case **and** a pleading in this case alerting the Court that litigation was suspended for two calendar weeks pending settlement discussions. That was critical to Defendants, because at that time the clerk had already entered default and Callier had requested a default judgment be entered. The parties specifically agreed that Callier would file appropriate paperwork with this Court so that a default judgment would not be entered.

33. Based on the foregoing, the Court should consider Callier's bad faith actions and find they weigh in favor of setting aside the entry of default.

# IV.
# Conclusion

For these reasons, Defendants ask the Court to set aside the entry of default.

Dated:     October 19, 2021.     Respectfully submitted,

**HENDERSHOT COWART P.C.**

By: /s/ *Ky Jurgensen*
    SIMON W. HENDERSHOT, III
    SBN: 09417200
    trey@hchlawyers.com
    KY JURGENSEN
    SBN: 24071804
    kjurgensen@hchlawyers.com
    1800 Bering Drive, Suite 600
    Houston, Texas 77057
    (713) 783-3110
    (713) 783-2809 Fax

*Attorneys for Keeping Capital, LLC and David King*

## Certificate of Service

The foregoing document will be served on all counsel of record via the Court's ECF/ENS system and parties below on the date of entry on the Court's docket.

Brandon Callier
6336 Franklin Trail
El Paso, Texas 79912
Plaintiff, Pro Se

    /s/ *Ky Jurgensen*
    Ky Jurgensen

## Affidavit of David King

State of California    §
                             §
Orange County       §

BEFORE ME, the undersigned authority, on this day personally appeared DAVID KING, who being first duly sworn, upon said oath testified as follows:

1. "My name is David King. I am over 18 years of age, of sound mind, and capable of making this affidavit. I am the President and a member of Keeping Capital, LLC, d/b/a Debt Dissolution ("***Debt Dissolution***"), a Florida limited liability company. I, along with Debt Dissolution, are defendants in Case No. 3:21-CV-0157-KC, Brandon Callier v. Michael Johnson, et al., In the United States District Court for the Western District of Texas, El Paso Division ("***Lawsuit***"). Each reference to "Defendants" in this affidavit refers jointly to Debt Dissolution and I as defendants in the Lawsuit. I am personally familiar with the facts stated in this affidavit by virtue of my role as Debt Dissolution's president and my personal participation in the events described. Each fact alleged in this affidavit is based on my personal knowledge and is true and correct. I am submitting this affidavit in support of Defendants' Motion to Set Aside Entry of Default in this case ("***Motion***").

2. Beginning in March 2021, Callier and Defendants entered settlement negotiations. In the midst of these negotiations, Callier alleges he received additional telephone solicitations from Debt Dissolution on behalf of a different client, an attorney named Michael Johnson. According to the Complaint in this lawsuit, the calls occurred between April 17 to 29, 2021 ("***Second Calls***"). King Aff., ¶ 5.

3. Defendants and Callier subsequently entered a Settlement Agreement. Under the Agreement, Callier agreed to release all claims against Defendants in return for payment of $10,000.

4. Callier signed the Settlement Agreement on April 30, 2021. Defendants signed the Settlement Agreement on May 4, 2021. At present, there is a dispute between the parties concerning the Settlement Agreement's effective. Callier falsely claims the Settlement Agreement was effective April 1, 2021.

5. However, that is not true. The Settlement Agreement was executed in multiple counterparts. The initial draft of the Settlement Agreement stated it was effective as of April 28, 2021. Callier signed that Agreement on April 30. A true and correct copy of that document is attached to the Motion as Exhibit 1.

6. Defendants countersigned the Agreement separately on May 4. Before signing, Defendants asked that the agreement be modified to reflect an effective date of May 3, 2021. A true and correct copy of Defendants' executed version of the Settlement Agreement is attached to the Motion as Exhibit 2.

7. On May 25, 2021, Defendants paid Callier $5,000 as their share of the $10,000 settlement payment. The payment was made via wire transfer paid by Debt Dissolution's affiliate, Occams Paradigm, Inc. Upon information and belief, the remaining $5,000 due was paid to Callier by LPG. A true and correct copy of the wire transfer confirmation page for Defendants' payment is attached to the Motion as Exhibit 3.

8. On September 30, 2021, I had a phone call with Callier to discuss the Lawsuit. We agreed that Callier would agree to suspend prosecution of the Lawsuit for two calendar weeks beginning on October 1, 2021. Callier also agreed that he would file, by no later than October 1, 2021, the following: 1) a Satisfaction of Judgment in the First Case, and 2) paperwork in the Lawsuit case alerting Judge Kathleen Cardone that the parties agreed to a two-week suspension. In return, Defendants agreed to engage with settlement discussions with Callier. The parties memorialized their agreement in an email that same day. A true and correct copy of that email chain is attached to the Motion as Exhibit 4. In Exhibit 4, the email addressed used by Callier is listed as "callier74@gmail.com". That is an email address I know to be used by Callier because I had previously corresponded with him at that address.

9. The following day, on October 1, 2021, Callier emailed me stating, "David, I just electronically filed the attached satisfaction of judgment. I am working on the settlement notice right now." That email also appears in Exhibit 4 to the Motion. A copy of a pleading titled "Satisfaction of Judgment" bearing the First Case's caption was attached to that email.

10. Despite Callier's promises and statements to the contrary, he never filed the proposed "Satisfaction of Judgment" in the First Case. Nor did he ever file anything in this Lawsuit alerting the Judge Cardone that the parties agreed to suspend this litigation for two weeks beginning on October 1.

11. I had further settlement discussions with Callier during that period, however, those discussions were not successful. The last of those discussions occurred on October 14, 2021. The two-week interval ended on October 15, 2021. That same day, Defendants hired Ky Jurgensen of the law firm Hendershot Cowart, PC, in Houston, Texas to represent us in this Lawsuit. We hired Mr. Jurgensen's law firm as soon as possible after the learning the settlement discussions had ended and the two-week litigation hold ended.



_____
DAVID KING

Subscribed and sworn to before me by DAVID KING, on this the October 19, 2021.

_____
Notary Public, State of California
SEE CALIFORNIA
JURAT ATTACHED
INTL Ve$ DATE 10-20-21

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of <u>Orange</u>

Subscribed and sworn to (or affirmed) before me on this 20th day of <u>October</u>, 20<u>21</u>, by <u>David King</u>

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

VICTORIA E. STRUTT
COMM # 2316254
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Comm. Exp. Dec. 17, 2023

(Seal)                            Signature /s/ Victoria E. Strutt